VASANT JINWALA *vs.* LORETTA BIZZARO.[1]

Middlesex. November 7, 1986. — April 2, 1987.

Present: BROWN, WARNER, & FINE, JJ.

*Statute*, Construction. *Landlord and Tenant*, Security deposit. *Words*, "Counterclaim."

General Laws c. 186, § 15B (6), as amended by St. 1978, c. 553, § 2, providing that, if a landlord fails to establish an account for a security deposit, he "shall forfeit his right to retain any portion of the security deposit . . . or, in any action by a tenant to recover a security deposit, to counterclaim for any damage to the premises" did not prevent a landlord from prosecuting an independent action against a tenant for damages to the rental premises. [3-7]

CIVIL ACTION commenced in the Cambridge Division of the District Court Department on November 13, 1984.

---

[1] Following oral argument, the court invited amici curiae briefs on the questions presented, with particular reference to relevant legislative history. The invitation was made generally by an announcement in the November 17, 1986, issue of Massachusetts Lawyers Weekly (15 M.L.W. 350). Invitations were also extended by the clerk of this court to: the consumer protection division of the office of the Attorney General of the Commonwealth, the Massachusetts Tenants Organization, Inc., the Massachusetts Law Reform Institute, and the Greater Boston Real Estate Board. Amici briefs were to be filed on or before January 5, 1987; none has been received.

On appeal to the Superior Court Department, the case was heard by *J. Harold Flannery,* J., on a motion for summary judgment.

*Frank J. Flanagan* for the plaintiff.

*Paul J. Rosen* for the defendant.

WARNER, J. The plaintiff (landlord) brought a summary process action in a District Court seeking to evict the defendant (tenant) from residential premises in Belmont. See G. L. c. 239. The tenant filed a counterclaim alleging violation by the landlord of the security deposit law. See G. L. c. 186, § 15B. It is undisputed that the landlord did violate the security deposit law by (1) failing to put the security deposit of $600 in a separate, interest-bearing account in a bank (G. L. c. 186, § 15B[3][*a*]), (2) failing to pay interest on the security deposit (§ 15B[3][*b*]), and (3) failing to give the tenant a separate written statement of the condition of the rented premises (§ 15B[2][*c*]). Under the provisions of § 15B(7), the failure of the landlord to put the security deposit in a separate bank account required the award of treble damages plus interest, court costs and reasonable attorney's fees. After the filing of the tenant's counterclaim, the landlord moved to amend the summary process complaint to add a claim for damages to the premises; the motion was denied. Judgment was thereafter entered for the landlord for possession and for the tenant on her counterclaim in the amount of $1,800.00 as damages and $200.00 as attorney's fees. An appeal by the landlord was not perfected.

Subsequently, the landlord commenced two small claims actions against the tenant in a District Court, one seeking rent of $100.00 and the other seeking to recover for damages to the premises in the amount of $1,200.00. The tenant appealed to the Superior Court from a judgment of $1,200.00 entered for the landlord on the damage claim. See G. L. c. 218, § 23. On the tenant's motion, a judge of the Superior Court entered a summary judgment for the tenant and ordered the landlord to pay to the tenant $500.00 as costs and attorney's fees. It is the landlord's appeal from this judgment which is before us.

General Laws c. 186, § 15B(6), as amended by St. 1978, c. 553, § 2, provides that if a landlord, as here, fails to establish an account for a security deposit, he "shall forfeit his right to retain any portion of the security deposit for any reason, or, *in any action by a tenant to recover a security deposit, to counterclaim for any damage to the premises*" (emphasis supplied). In a memorandum of decision on the motion for summary judgment, the Superior Court judge reasoned that: (1) a purpose of the Legislature in enacting G. L. c. 186, § 15B(6), was to encourage tenants to seek redress of violations of the security deposit law without fear that the landlord would counterclaim for property damage; (2) limiting the reach of the statute to its express language, i.e., prohibiting only counterclaims for damages in an action brought by a tenant to recover a security deposit, would render it meaningless as a deterrent to landlords' flouting the security deposit law; and (3) since a landlord's claim for damages in an action brought by a tenant to recover a security deposit would otherwise be a compulsory counterclaim, the Legislature has effectively barred a landlord from ever bringing a claim, directly or by counterclaim.[2]

We begin with familiar principles of statutory construction. " '[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' " *Industrial Fin. Corp.* v. *State Tax Commn.*, 367 Mass. 360, 364 (1975), quoting from *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). *O'Brien* v. *Director of the Div. of Employment Sec.*, 393 Mass. 482, 487-488 (1984). In so construing a statute, we may examine it "in connection with [its] development, [its] progression through the legislative body, the history of the times, prior legislation, [and] contem-

---

[2] We note that G. L. c. 186, § 15B(6), does not bar a landlord's counterclaim for damages *unless it is proved* that the landlord has violated one of the provisions enumerated in clauses (*a*) through (*e*) of § 15B(6).

porary customs and conditions." *Commonwealth* v. *Welosky,* 276 Mass. 398, 401 (1931). *Chipman* v. *Massachusetts Bay Transp. Authy.,* 366 Mass. 253, 256 (1974). If the language of a statute is clear and unambiguous it must be given its ordinary meaning, as that language is the principal source of insight into legislative purpose. *Bronstein* v. *Prudential Ins. Co. of America,* 390 Mass. 701, 704 (1984). Where, as here, the problems addressed by legislation are "well known; and the Legislature has attempted progressively to deal with them," *Hampshire Village Associates* v. *District Court of Hampshire,* 381 Mass. 148, 151-152, cert. denied sub nom. *Ruhlander* v. *District Court of Hampshire,* 449 U.S. 1062 (1980), and the contention of the tenant and the decision of the judge rationally advance the proposition that the Legislature meant more than what it said, it is appropriate to examine the legislative history for guides as to the objects to be accomplished. See *Boston* v. *Quincy Mkt. Cold Storage Co.,* 312 Mass. 638, 642 (1942); *Murphy* v. *Bohn,* 377 Mass. 544, 547-548 (1979); 2A Sands, Sutherland Statutory Construction § 48.03 (4th ed. 1984). Cf. *Mellor* v. *Berman,* 390 Mass. 275, 281-283 (1983).

The evils which the security deposit law sought to address are suggested by the statute itself. "A security deposit shall continue to be the property of the tenant making such deposit, shall not be commingled with the assets of the lessor, and shall not be subject to the claims of any creditor of the lessor or of the lessor's successor in interest, including a foreclosing mortgagee or trustee in bankruptcy . . . ." G. L. c. 186, § 15B(1)(*e*). The law allows for the receipt under strict conditions (§§ 15B[2][*b*], [*c*] & [*d*], 15B[3], [4] & [5]) of a security deposit in an amount equal to the first month's rent (§ 15B[1] [*b*] [*iii*]), as some measure of security for unpaid rent, certain unpaid increases in real estate taxes and reasonable amounts necessary to repair damage for which the tenant is responsible. § 15B(4)(*i*), (*ii*), (*iii*). "By limiting the freedom of landlords and tenants to contract in this regard [see § 15B(8)], the Legislature manifested a concern for the welfare of tenants in residential property who, as a practical matter, are generally in inferior bargaining positions and find traditional avenues of redress

relatively useless; i.e., the legal expense of chasing a security deposit would be more than the amount of the deposit." *Goes* v. *Feldman*, 8 Mass. App. Ct. 84, 91 (1979). *Hampshire Village Associates* v. *District Court of Hampshire, supra* at 152-153. *Mellor* v. *Berman, supra* at 282. To that end, the Legislature has provided that failure of a landlord to observe the security deposit law will result in forfeiture of the deposit, § 15B(6), and for some violations, if litigation is necessary to force the return of a deposit, see *Castenholz* v. *Caira*, 21 Mass. App. Ct. 758, 762-763 (1986), has mandated the imposition of treble damages, interest and costs, and attorney's fees. § 15B(7). See *Hampshire Village Associates* v. *District Court of Hampshire, supra* at 150-151. *Mellor* v. *Berman, supra* at 278-283.

We next consider the legislative history of the parts of G. L. c. 186, § 15B, which are pertinent to the issue presented here, against the backdrop of the purpose of the security deposit provisions we have discussed. Section 15B has evolved from a simple prohibition against a security deposit of more than two month's rent, St. 1969, c. 244, § 1, to its present elaborate form. St. 1978, c. 553, § 2, as amended by St. 1981, c. 82; St. 1983, c. 645, §§ 1 & 2; St. 1984, c. 170, §§ 2, 2A, 3, 6 & 7; St. 1984, c. 474; *Hampshire Village Associates* v. *District Court of Hampshire, supra* at 151-152; *Mellor* v. *Berman, supra* at 282. The first monetary sanction for violation of the law was inserted by St. 1970, c. 666, § 1. Then, a landlord who wilfully violated the law was liable to pay double the portion of a security deposit due plus interest. The requirement of wilfullness was deleted by St. 1972, c. 639 § 1. See *Mellor* v. *Berman, supra* at 282-283.

The rewriting of § 15B by St. 1977, c. 979, § 1, was extensive. In respects here material, the sanctions for violations of the security deposit provisions were heightened. Under subsection (6), a landlord violating the law would "forfeit his right to retain any portion of the security deposit for any reason *or to sue the tenant* for any money owed for unpaid rent, due under a valid tax escalation clause, *or for any damage to the premises . . .*" (emphasis supplied). Subsection (7) provided

for treble damages, interest, court costs and attorney's fees for the same violations now also mandating such awards. § 15B(7).

The sanction of St. 1977, c. 979, § 1, barring a delinquent landlord from bringing suit against the tenant for damages to the rental premises is precisely the broad prohibition for which the tenant successfully contended in the Superior Court. However, approved about six months after St. 1977, c. 979, § 1, was an amendment by St. 1978, c. 553, § 2, which brought § 15B(6) to its present form. In relevant portion, that amendment substituted the words "or, in any action by a tenant to recover a security deposit, to counterclaim" for "or to sue the tenant." [3]

We think that the language of G. L. c. 186, § 15B(6), the purposes for which the statute was enacted and the legislative history make clear that the Legislature meant what it said, i.e., that a landlord in violation of the security deposit law would be barred only from making a claim against the tenant for damage to the premises by way of counterclaim in an action by the tenant to recover the security deposit. In this context, we give the word "counterclaim" its ordinary legal meaning. See G. L. c. 4, § 6, cl. Third; *Arthur A. Johnson Corp.* v. *Commonwealth,* 306 Mass. 347, 351 (1940). Such a construction preserves the balance apparently sought by the Legislature. "[T]he purpose of § 15B is seen not to be arbitrarily penal; rather, 'the underlying goal [is to establish] an "equitable relationship"'' between tenants and landlords." *Castenholz* v. *Caira,* 21 Mass. App. Ct. at 763, quoting from *McGrath* v. *Mishara,* 386 Mass. 74, 85 (1982). The construction which we adopt affords a wronged tenant easy and inexpensive means of securing the repayment of the security deposit, with penalty awards in appropriate cases, in a proceeding uncluttered with claims of the landlord for damages to the premises. It deters violations of the statute by landlords by precluding, in the

---

[3] The language adopted by the Legislature appeared in 1978 Senate Doc. Nos. 1557 & 1661. The Legislature had before it a number of proposals calling for the retention of the prohibition against any landlord claim for damages. See 1978 Senate Doc. Nos. 85 & 110; 1978 House Doc. Nos. 974 & 2517.

event of such, direct access to the security deposit, the purpose of which is, among other things, to provide a source of funds for the payment of the cost of repairs for which a tenant is responsible. Finally, it does not prevent a landlord from prosecuting an independent action to recover damages for abuse of the rental premises.[4] An equitable balance is thus struck between the rights of landlords and those of tenants.

The judgment is reversed, and a new judgment is to be entered for the landlord for $1,200.00 — the amount of the District Court judgment — together with appropriate interest.[5]

*So ordered.*

---

[4] The landlord is not barred by rules of issue preclusion, see *Cousineau* v. *Laramee,* 388 Mass. 859, 863 n.4 (1983); *Roche* v. *Roche,* 22 Mass. App. Ct. 306, 308-309 (1986), and cases cited, by virtue of his failure to seek recovery for damages in the original summary process complaint or by the denial of his motion to amend the complaint for the purpose. Relief available to a landlord is limited to possession or payment for rent or use and occupation. See G. L. c. 239, §§ 1, 1A, 2 & 3; *King* v. *Dickerman,* 11 Gray 480, 481 (1858); *Warren* v. *James,* 130 Mass. 540, 541 (1881); Bishop, Prima Facie Case, Proof and Defense § 1361 (3d ed. 1987); Rodman, Methods of Practice §§ 1021-1023 (1981); Stavisky, Landlord and Tenant Law § 881 (1977). Indeed, claims for rent or for use and occupation, relative newcomers to the summary process procedure, see St. 1960, c. 463, § 1 & St. 1977, c. 636 (possession being the only relief previously allowed), are *not* subsequently barred by the failure to plead them in a summary process action. G. L. c. 239, § 2, as amended by St. 1977, c. 636.

[5] No question has been raised as to the propriety of the amount of the District Court finding for the landlord. See G. L. c. 218, § 23.